UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MERCEDES-BENZ, US INTERNATIONAL INC., et al** ) ) ) | |
| **Plaintiffs,** ) ) | |
| v. ) ) | Case No. 7:22-cv-00257-ACA |
| **INTEVA PRODUCTS LLC, et al** ) ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Mercedes-Benz U.S. International, Inc., ("MBUSI") produces cars for Daimler AG[1] and Mercedes-Benz USA. MBUSI, Daimler AG, and Mercedes-Benz USA executed an agreement which adopted an accounting principle known as the "arm's length principle," under which Daimler AG and Mercedes-Benz USA agreed to pay MBUSI a price for the cars MBUSI manufactured "that allow[ed] MBUSI to recover its costs of assembling and earn an arm's length profit." Because of this agreement, MBUSI enjoys an "essentially risk free status."

In 2018, a fire broke out at Defendant Magnesium Products of America's ("MPA") manufacturing facility, and its production of magnesium cross-car beams halted. The cessation of production impacted the business operations of Defendant

---

[1] Daimler AG has changed its name. (Doc. 97-1 at 7). The parties refer to this entity as Daimler AG because that was its name at the relevant time. (*Id*.). The court likewise refers to this entity as Daimler AG.

Inteva Products, LLC ("Inteva"), who used the beams to manufacture cockpits for cars produced by MBUSI. Inteva and MPA notified MBUSI that, in their view, the fire was a *force majeure*[2] event, and MBUSI rejected that determination. The production shutdown cost MBUSI approximately $33 million.

At the end of fiscal year 2018, the accounting firm retained by MBUSI performed the arm's length principle analysis, which accounted for the $33 million in costs and expenses that MBUSI incurred because of the fire. MBUSI issued a debit note to Daimler AG and Mercedes-Benz USA and received payment from Daimler AG and Mercedes-Benz USA. At some point, MBUSI also submitted a claim to its insurer Plaintiff HDI Global Insurance Company ("HDI") for certain fire-related damages.

MBUSI and HDI sued MPA and Inteva, alleging breach of contract, breach of contractual indemnity agreement, and as to MPA, breach of bailment agreement. MPA and Inteva move for summary judgment. (Docs. 95, 98). HDI cross-moves for partial summary judgment as to the *force majeure* affirmative defense. (Doc. 101). Because MBUSI and HDI have failed to establish a genuine dispute of material fact as to the existence of any recoverable damages for their claims, the court **WILL**

---

[2] *Force majeure* is French for "a superior force." *Force Majeure*, BLACK'S LAW DICTIONARY (11th ed. 2019) (quotation marks omitted). A *force-majeure* clause generally refers to "[a] contractual provision allocating the risk of loss if performance becomes impossible or impracticable, esp. as a result of an event or effect that the parties could not have anticipated or controlled." *Force-Majeure Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019).

2

**GRANT SUMMARY JUDGMENT** in favor of MPA and Inteva. Because an affirmative defense is relevant only after a party prevails on liability, the court **WILL DENY** the motion by HDI **AS MOOT**.

I. BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

a. The 2018 Fire at MPA's Facility

In May 2018, MBUSI produced three models of Mercedes cars. (Doc. 97-1 at 7). MPA manufactured the cross-car beams for MBUSI's cars at its facility in Eaton Rapids, Michigan. (*Id.* at 7, 12). MPA manufactured the cross-car beam from magnesium. (*Id.* at 7, 39). The chemical composition of magnesium presents a risk of "potential ignition." (*Id.* at 39). To manufacture the cross-car beams, MPA used

3

certain tools such as die-casting machines and trim tools (collectively, "the tools"). (Doc. 97-1 at 7). MBUSI paid for MPA to create the tools. (*Id.*).

After MPA manufactured the cross-car beams, Inteva incorporated the cross-car beams into a complete cockpit assembly. (*Id.* at 6). Inteva then supplied the complete cockpit assemblies to MBUSI. (*Id.*). MBUSI incorporated those cockpit assemblies into the cars and supplied completed cars to either Daimler AG or Mercedes-Benz USA. (Doc. 97-1 at 6, 35). Daimler AG received cars intended for international sale, and Mercedes-Benz USA received cars intended for domestic markets. (*Id.* at 35).

On May 2, 2018, a fire occurred at MPA's Eaton Rapids facility. (*See generally id.* at 15). Production of cross-car beams at the MPA facility ceased. (Doc. 1-1 ¶¶ 24–25; doc. 4 ¶¶ 24–25; doc. 5 ¶¶ 24–25). The effect of this cessation worked its way up the supply-chain and culminated in MBUSI "miss[ing]" production for approximately 10,000 cars. (Doc. 97-1 at 29; *see also id.* at 9). After the fire, MBUSI notified MPA of its intent to retrieve the tools at MPA's facility. (Doc. 97-4). MPA returned the tools to MBUSI, and some of the tools required repair because of damage sustained during the fire. (Doc. 97-1 at 8–9). MBUSI incurred approximately $33 million in costs and expenses because of the fire. (*Id.* at 32–33; doc. 1-1 ¶ 28).

Both MPA and Inteva notified MBUSI of their view that the fire was a *force majeure* event, and MBUSI rejected that determination. (Doc. 97-1 at 13). At some point, MBUSI submitted a claim to HDI for costs and expenses incurred because of the fire. (*See id*. at 11). MBUSI received roughly $4.7 million from HDI in January 2019. (*Id*.). Although MBUSI received this payment in calendar-year 2019, the payment accrued for accounting purposes in fiscal-year 2018. (*Id*.).

b.  <u>The Contract Manufacturing Agreement</u>

MBUSI is a domestic subsidiary of the foreign corporation, Daimler AG. (Doc. 97-1 at 36; *see also id*. at 31–32). MBUSI, Mercedes-Benz USA, and Daimler AG are associated entities. (*See generally id*. at 36; *accord* doc. 97-5).

When independent entities conduct business, the conditions of their commercial and financial relations are generally determined by market forces. (Doc. 106-2 at 31). But when associated entities—like MBUSI, Mercedes-Benz USA, and Daimler AG—conduct business, market forces do not always govern the conditions of their business relationship. (*Id*.). An accounting principle known as "[t]he arm's length principle . . . provides the closest approximation of the workings of the open market . . . whe[n] property . . . is transferred or services are rendered between associated" entities. (*Id*. at 36).

MBUSI and Daimler AG executed a "Contract Manufacturing Agreement" which includes a remuneration provision that mirrors the arm's length principle.

5

(Doc. 97-5 at 3 art. 12). Although Daimler AG and MBUSI are the only named parties in this agreement (*see id*. at 1), MBUSI's corporate representative testified that "the same agreement [is] in play" between MBUSI and Mercedes-Benz USA (doc. 97-1 at 35).

The agreement provides that Daimler AG and Mercedes-Benz USA will purchase cars from MBUSI at transfer prices "that allow MBUSI to recover its costs of assembling" the cars and earn "an arm's length profit." (Doc. 97-5 at 3 § 12.1). Daimler AG and Mercedes-Benz USA initially pay a "provisional transfer price" for the cars, and at the end of each fiscal year, MBUSI retains an accounting firm to evaluate the transfer price based on MBUSI's "actual cost and volumes" to produce its cars. (Doc. 97-5 at 4 § 12.4; doc. 97-1 at 31–32). If appropriate, MBUSI then issues a credit note or debit note to Daimler AG and Mercedes-Benz USA for a "year end adjustment," which reflects the final transfer price. (Doc. 97-5 at 4 § 12.4; doc. 97-1 at 31–35). Daimler AG and Mercedes-Benz USA "[a]re obligated to pay" the transfer price. (Doc. 97-1 at 34). The use of transfer prices ensures that MBUSI is "essentially risk free." (Doc. 97-5 at 3 § 12.1).

At the end of the 2018 fiscal year, the accounting firm retained by MBUSI performed its year end adjustment analysis. (*See* doc. 97-1 at 32–35). The accounting firm adjusted the transfer price "based on the overall cost picture at MBUSI, not just the fire." (*Id*. at 32). The approximately $33 million that MBUSI incurred in costs

and expenses because of the fire was "part of" the adjustment analysis. (*Id*. at 35). Mercedes-Benz USA and Daimler AG paid the transfer price. (*See id*. at 34–35).

    c. <u>Procedural History</u>

MBUSI and HDI filed their complaint against MPA and Inteva in the Circuit Court of Jefferson County. (Doc. 1-1 at 4). The complaint alleges five claims: (1) breach of contract against Inteva ("Count One"); (2) contractual indemnity against Inteva ("Count Two"); (3) breach of contract against MPA ("Count Three"); (4) contractual indemnify against MPA ("Count Four"); (5) and breach of bailment agreement against MPA ("Count Five"). (*Id*. at 8–16). MPA and Inteva timely removed to this court. (Doc. 1).

This case proceeded in two phases. (Doc. 36). The first phase of this case considered the effect of a post-fire purchase order between MPI and MBUSI on MBUSI's damages and Inteva's status as a third-party beneficiary. (*Id*. at 3; *see also* docs. 75, 91). During that phase, the court held that the post-fire purchase order capped any damages that MBUSI could recover from MPA at one million dollars. (Doc. 91 at 18). The court further held that Inteva was not a third-party beneficiary to the post-fire Purchase Order between MPI and MBUSI. (*Id*. at 29). The case proceeded to the second phase.

MPA and Inteva now move for summary judgment as to all claims pleaded against them. (Docs. 95, 98). HDI moves for partial summary judgment as to the availability of the *force majeure* affirmative defense to MPA and Inteva. (Doc. 101).

## II.   DISCUSSION

Entry of summary judgment is appropriate if "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1334 (11th Cir. 2016) (quotation marks omitted); *accord* Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted). Courts must "review[] the evidence and draw[] all reasonable inferences in the light most favorable to the non-moving party." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

Inteva and MPA assert a common reason for the court to enter judgment in their favor as to the claims against them: that MBUSI and HDI have been fully compensated for their alleged damages. (*See* doc. 100 at 12–16; *accord* doc. 102 at 26–27). The court will consider that argument first because it pretermits all the rest.

1. <u>Damages</u>

MBUSI and HDI pleaded three groups of claims: breach of contract (Counts One and Three); breach of contractual indemnity (Counts Two and Four): and breach of bailment (Count Five). (Doc. 1-1 at 8–14). Under Alabama law,[3] breach of bailment claims and breach of contractual indemnity claims arise under contract law and are subject to general contract-law principles. *See, e.g.*, *S/M Indus., Inc. v. Hapag-Lloyd A.G.*, 586 So. 2d 876, 881 (Ala. 1991) (explaining that a bailment is "the delivery of personal property by one person to another for a specific purpose" accompanied by an express or implied contract); *Woodson v. Hare*, 13 So. 2d 172, 174 (Ala. 1943); *Peerless Landfill Co. v. Haleyville Solid Waste Disposal Auth.*, 941 So. 2d 312, 316 (Ala. Civ. App. 2006) (applying "principles of contract interpretation" to a contractual indemnity claim). To prevail on their contract-based claims, MBUSI and HDI must prove, among other elements, that they suffered a compensable harm. *See Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490–91 (Ala. 2020).

MPA and Inteva contend that MBUSI and HDI fully mitigated their damages because Daimler AG and Mercedes-Benz USA paid the transfer price to MBUSI. (Doc. 100 at 12–16; doc. 102 at 26–27). MBUSI and HDI respond that the collateral

---

[3] Although the parties do not brief the issue, they appear in agreement that Alabama law applies to these claims. (*See, e.g.*, *compare* doc. 100 at 12 (citing Alabama caselaw), *and* doc. 102 at 24 (same), *with* doc. 111 at 19 (same); *see also* doc. 106-7 at 63 § 31).

9

source rule precludes the court from considering evidence and argument about the transfer price payments. (Doc. 112 at 11–12; doc. 111 at 27–29). MPA and Inteva reply that the collateral source rule applies only to tort claims, not contract claims like the ones asserted by MBUSI and HDI. (Doc. 117 at 2–3; doc. 114 at 6, 11–12).

> *a. The collateral source rule does not apply to claims arising under contract law.*

"Alabama law generally bars double recoveries, and, although a party is entitled to full compensation for his injuries, he can gain but one satisfaction." *Ex parte Barnett*, 978 So. 2d 729, 732 (Ala. 2007) (cleaned up). In contract cases, two principles underlie this rule: (1) "damages for a breach of contract should not put the injured party in a better position than he would have been in if there had been performance" and (2) "damages for a breach of contract should return the injured party to the position the party would have been in had the contract been fully performed." *Centon Elecs., Inc. v. Bonar*, 614 So. 2d 999, 1004 (Ala. 1993).

In tort cases, the collateral source rule is an exception to the prohibition against double recovery. *Ex parte Barnett*, 978 So. 2d at 732. The collateral source rule "provides that benefits received from a source wholly independent of the wrongdoer in a tort case should not be taken into account in computing the plaintiff's recoverable damages." *Centon Elecs., Inc.*, 614 So. 2d at 1004 (Ala. 1993). But this rule does not extend to breach of contract claims. *See id.* Accordingly, Alabama law requires contemplation of benefits the plaintiff received from other sources in breach

10

of contract cases. *See id*. (considering the effect of a settlement agreement on a party's breach of contract claim); *see also Files v. Schaible*, 445 So. 2d 257, 261–62 (Ala. 1984) (affirming a damages award for a breach of contract claim that "include[d] a downward adjustment for" payments "from a collateral source").

Accordingly, the court must consider evidence and argument regarding the effect of the transfer-price analysis and associated payment from Daimler AG and Mercedes-Benz USA to rule on the pending motions. *See Centon Elecs., Inc.*, 614 So. 2d at 1004; *accord Files*, 445 So. 2d at 261–62. In their response briefs, MBUSI and HDI assert that "this [c]ourt should strike any such evidence because [of] the collateral source rule." (Doc. 112 at 12; doc. 111 at 29). The court does not ordinarily consider motions that are buried in parties' briefs. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009); *see also* Fed. R. Civ. P. 7(b)(1). To the extent such a motion was made, the court **WILL DENY** the request to strike evidence of the transfer price analysis and associated payment.

> b. *MBUSI and HDI have not adequately identified a genuine dispute of material fact regarding their damages.*

At trial, MBUSI and HDI bear the burden of proving a recoverable harm as an essential element of all five of their claims. *See Dupree*, 308 So. 3d at 490–91. An inability to prove that "element necessarily results in a judgment for the opposing party." *Id*. at 491.

Because MBUSI and HDI bear this burden at trial, MPA and Inteva "need not support [their] motion[s] with affidavits or other similar material *negating*" MBUSI and HDI's claims. *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1336 n.7 (11th Cir. 2023) (quotation marks omitted; emphasis in original). "Instead, [MPA and Inteva] may simply point out . . . that there is an absence of evidence to support [MBUSI and HDI's] case." *Id*. (quotation marks omitted).

MBUSI and HDI allege that they incurred approximately $33 million in damages because of the alleged breaches by Inteva and MPA of the parties' contractual arrangements. (*See generally* doc. 1-1 ¶¶ 43, 61; *accord* doc. 97-1 at 33–35; doc. 99-8 at 17). MPA and Inteva presented evidence that an agreement existed between MBUSI, Daimler AG, and Mercedes-Benz USA that guaranteed MBUSI an "essentially risk free status" under which Daimler AG and Mercedes-Benz USA paid a transfer price for the cars MBUSI manufactured "that allow[ed] MBUSI to recover its costs of assembling and earn an arm's length profit." (Doc. 19-5 at 3 at 3 § 12.1; doc. 97-1 at 35).

MPA and Inteva presented further evidence that the $33 million MBUSI and HDI now seek as damages was "part" of an adjustment made in fiscal year 2018 to increase the transfer prices of the cars and Daimler AG and Mercedes-Benz USA paid the transfer price. (Doc. 97-1 at 33–34). The adjustment considered not only MBUSI's increased costs from the fire, but also any other cost increases or

12

reductions, adjusted to ensure that MBUSI's profits remained in a specific "profit corridor." (*Id*. at 32–34). Accordingly, MPA and Inteva carried their initial summary judgment burden to identify an absence of evidence that MBUSI and HDI suffered any remaining damages. *See Willis*, 77 F.4th at 1336 n.7.

Because MPA and Inteva carried their initial burden, "the burden [then] shift[s] to [MBUSI and HDI] to demonstrate that there is indeed an issue of material fact that precludes summary judgment." *Id*. (cleaned up). MBSI and HDI "must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation marks omitted). "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quotation marks omitted).

First, MBUSI and HDI contend that "[b]usinesses often choose to make price changes in an attempt to remain profitable[,]" and "[p]rice changes notwithstanding, those same businesses may still sue a party whose actions or omissions directly damage the business." (Doc. 112 at 13). But this assertion presupposes that MBUSI and HDI suffered recoverable damages and ignores the crux of the argument that they have not.

13

Second, MBUSI and HDI appear to invoke judicial estoppel as to the arguments presented by MPA based on legal positions MPA took in another action. (*See* doc. 112 at 13). Third, MBUSI and HDI assert that the record evidence "flatly contradicts [MPA and Inteva's] assertions." (Doc. 112 at 12–14; doc. 111 at 29). The court will consider these arguments in turn.

"The equitable doctrine of judicial estoppel is intended to prevent the perversion of the judicial process and protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc) (cleaned up). The Eleventh "[C]ircuit employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Id.* at 1181 (quotation marks omitted).

HDI and other insurers of Daimler AG (collectively, "the insurers") filed a negligence action in Michigan state court against MPA, seeking damages for "business interruption, the loss of business income, and lost profits" due to the fire. *See generally HDI Glob. SE v. Magnesium Prods. of Am., Inc.*, No. 360385, 2023 WL 2938557, at *1–2 (Mich. Ct. App. Apr. 13, 2023) (quotation marks omitted). MPA asserted that the insurers' asserted damages were barred by Michigan's economic-loss doctrine, which limits the general duty to use due care to prevent

14

harm to person or property of others and does not extend to intangible economic harms like lost profits. (Doc. 116-5); *see also* Brief, *HDI Glob. SE v. Magnesium Prods. of Am., Inc.*, No. 2021-376-CB, 2021 WL 11505467 (Mich. Cir. Ct. Eaton Cnty. Dec. 6, 2021). The trial court dismissed the insurers' negligence claim. *HDI Glob. SE*, 2023 WL 2938557, at *1. The Court of Appeals of Michigan affirmed the dismissal. *Id*. at *1–3.

MBUSI and HDI do not explain how MPA's positions in the Michigan state-court litigation and this litigation are inconsistent (*see* doc. 112 at 13), and the court cannot discern an inconsistency. In the Michigan state court litigation, MPA argued that its duty to exercise due care did not extend to preventing intangible business damages to the insurers. *See HDI Glob. SE*, 2023 WL 2938557, at *1–2. Here, MPA argues that MBUSI and HDI have been fully compensated for the business damages they claim because of payments from Daimler AG and Mercedes-Benz USA to MBUSI. (Doc. 100 at 12–16; doc. 102 at 26–27). Accordingly, the judicial estoppel doctrine does not apply.

Third, MBUSI and HDI assert that there is a genuine dispute of material fact regarding whether they have been made whole. (Doc. 112 at 14; *accord* doc. 111 at 29). MBUSI and HDI emphasize two facts in particular: (1) the transfer price adjustment occurred to maintain compliance with unidentified tax codes and (2) the

15

transfer price adjustment reflects a multi factor analysis, which occurs annually and not because of the 2018 fire. (Doc. 112 at 14–15; *accord* doc. 111 at 29).

The court first rejects MBUSI and HDI's argument that the reason for the transfer price adjustment analysis is entitled to weight. MBUSI and HDI cite no authority for this position (*see*, *e.g.*, doc. 112 at 14), and in any event, the argument is contrary to Alabama law, *see*, *e.g.*, *Centon Elecs., Inc.*, 614 So. 2d at 1004 ("[D]amages for a breach of contract should return the injured party to the position the party would have been in had the contract been fully performed."). Irrespective of the business motivations for the transfer price adjustment, the dispositive question before the court is whether no reasonable jury could find that MBUSI and HDI were not returned to the place they would've been in—*i.e.*, MBUSI's "profit corridor" (doc. 97-1 at 32)—but for the alleged breaches by Inteva and MPA of the parties' contractual arrangements.

Because MBUSI and HDI bear the burden of proving this issue at trial, they "must come forward with evidence sufficient to withstand a directed verdict motion" to avoid summary judgment. *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1356 (11th Cir. 2022) (quotation marks omitted). Specifically, MBUSI and HDI must identify a "legally sufficient evidentiary basis" for a reasonable jury to allocate damages to them. *Buland v. NCL (Bahamas) Ltd*, 992 F.3d 1143, 1152 (11th Cir. 2021) (affirming a district court's directed verdict in the defendant's favor on

the issue of damages); *see also Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1175 (11th Cir. 1991) ("Alabama law controls the issue of compensatory damages."). MBUSI and HDI can make this evidentiary showing through direct or circumstantial evidence, *see, e.g., id.*, but either way, MBUSI and HDI must submit evidence that they have damages to avoid summary judgment, *see Great Lakes Ins. SE*, 36 F.4th at 1357.

MBUSI and HDI emphasize that the transfer price analysis is multi-factored and considers MBUSI's "total overall [financial] picture." (Doc. 112 at 14–15; *accord* doc. 111 at 29). The testimony from MBUSI's corporate representative supports this assertion. (*E.g.*, doc. 97-1 at 33–34). But MBUSI's corporate representative's own testimony establishes that the costs and expenses associated with the fire were "accounted for" in the transfer price analysis. (*Id.*). MBUSI's corporate representative testified that MBUSI "would not have adjusted the [transfer] price" in 2018 if MBUSI's profits "w[ere] still in the[ir profit] corridor." (*Id.* at 34). But because the fire and its associated costs removed MBUSI from its profit corridor, MBUSI conducted the transfer price analysis to "account for" those costs, and Daimler AG and Mercedes-Benz USA paid the transfer price adjustment, which returned MBUSI to its profit corridor. (*Id.* at 33–34).

Ultimately, if MBUSI and HDI were not returned to the place they would've been in—*i.e.*, MBUSI's "profit corridor" (doc. 97-1 at 32)—but for the alleged

breaches by Inteva and MPA of the parties' contractual arrangements, MBUSI and HDI do not provide the court with any evidentiary basis to conclude that a reasonable jury could make this finding. In fact, the evidence would contradict any such finding. (*See*, *e.g.*, *id*. at 33–34).

To be clear, the court is not imposing an insurmountable evidentiary burden on MBUSI and HDI. MBUSI's corporate representative testified that MBUSI is "very transparent with [its] colleagues at" Daimler AG and Mercedes-Benz USA. (*Id*. at 34). MBUSI provides them "all the details and have the full transparency of why and what has occurred to create the transfer price adjustment." (*Id*.). Although it appears that MBUSI and HDI would have the documents and evidence that could reflect any discrepancy between the payments MBUSI received and MBUSI and HDI's asserted damages, such evidence is not before the court. Instead, the undisputed evidence before the court is that (1) MBUSI's costs and expenses to produce cars increased in 2018; (2) the increase was because of the fire at MPA's facility; (3) MBUSI adjusted the transfer price; (4) the costs and expenses caused by the fire were accounted for in the price adjustment analysis; and (5) Daimler AG and Mercedes-Benz USA paid the transfer price. (*See id*. at 33–35).

To survive summary judgment, MBUSI and HDI must identify an evidentiary basis for a reasonable jury to find that their damages have not been fully mitigated. MBUSI and HDI have not carried that burden. Accordingly, the court **GRANTS** the

motions by MPA and Inteva, (doc. 95; doc. 98), and **WILL ENTER SUMMARY JUDGMENT** in their favor as to all claims against them.

The court **DENIES** MPA's request for costs and attorney's fees in association with the filing of its motion for summary judgment. (Doc. 100 at 5, 31). MPA presents no argument as to why it would be entitled to costs and attorney's fees. (*See id.*) It simply stated that it was. (*See id.*). Because MPA failed to brief why it would be entitled to costs and attorney's fees, the court will not address this argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[B]rief[s] must include an argument containing [the party's] contentions and the reasons for them, with citations to the authorities and parts of the record on which the [party] relies."); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (arguments that are not "briefed before the court" are forfeited and will not be addressed); *see also United States v. Campbell*, 26 F.4th 860, 871–72 (11th Cir. 2022) (en banc).

    2. <u>HDI's Motion for Partial Summary Judgment</u>

HDI moves for partial summary judgment as to the availability of a *force majeure* affirmative defense to MPA and Inteva. (Doc. 101). An affirmative defense is relevant only if a party prevails on liability. *See, e.g.*, *BSI Rentals, Inc. v. Wendt*, 893 So. 2d 1184, 1187 (Ala. Civ. App. 2004). Because the court will enter judgment

against HDI for all claims, the court **WILL DENY** HDI's motion for partial summary judgment **AS MOOT**.

### III. CONCLUSION

The court **WILL GRANT** the motions for summary judgment by MPA and Inteva. (Docs. 95, 98). The court **WILL ENTER SUMMARY JUDGMENT** in favor of MPA and Inteva as to all claims. The court **WILL DENY AS MOOT** the motion by HDI. (Doc. 101). The court will enter a separate final judgment consistent with this opinion.

**DONE** and **ORDERED** this October 25, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE